PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Russell, S.J.

PAMELA ENNIS HUFF

v. Record No. 151688

MICHAEL G. WINSTON, SHERIFF, IN HIS OFFICIAL CAPACITY

OPINION BY
JUSTICE WILLIAM C. MIMS
September 8, 2016

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
David B. Carson, Judge

In this appeal, we consider the circumstances under which the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4333 ("USERRA"), provides for a two-year convalescence period. We also consider whether 38 U.S.C. §§ 4312 and 4313 apply to claims based on an employer's conduct after reemployment.

## I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

A.    Factual Background

Pamela Ennis Huff ("Huff") was initially hired by the Roanoke County Sheriff's Office (the "Sheriff") in November 2001 as a Deputy Sheriff. At the time, she was also a member of the United States Army Reserve.

In December 2009, Huff was serving as a Deputy Sheriff Bailiff when she was called to active duty and deployed to Afghanistan.[1] During her tour of duty, Huff suffered a broken nose, injuries to her hip and spine, and a concussion, which resulted in a traumatic brain injury. In April 2011, she was diagnosed with post-traumatic stress disorder ("PTSD") and major depressive disorder.

_____

[1] Huff's sacrifice on behalf of our country and the respect due to her as a member of the uniformed services is noted and appreciated. The only issue before the Court is the proper scope and application of 38 U.S.C. §§ 4312 and 4313.

Huff returned from Afghanistan in May 2011, and she was discharged from active duty shortly thereafter. Upon her return, she contacted the Sheriff regarding reemployment. In July 2011, the Sheriff rehired Huff as a Deputy Sheriff Bailiff.

Despite treatment at the Salem VA Medical Center, Huff continued to suffer from PTSD and depression-related symptoms during her employment. After certain incidents came to the Sheriff's attention, Huff was twice required to undergo "Fitness for Duty Evaluations." The Sheriff deemed Huff fit for duty on both occasions.

In August 2011, Huff requested unpaid leave on Fridays due to ongoing counseling sessions that were scheduled for Thursday evenings. The Sheriff advised her that he could not provide leave on every Friday if she remained in the court services division. Instead, he offered to transfer her from court services to corrections to provide the office with greater scheduling flexibility. Huff considered the transfer a demotion, and declined to accept it. The Sheriff then indicated that she could take up to thirty days unpaid administrative leave to seek counseling and treatment. Beginning in late November 2011, Huff took thirty days leave pursuant to the Family and Medical Leave Act.

Upon her return, Huff was authorized by her treating physician to work on a full-time, "light duty" basis through April 1, 2012. She began working in this capacity, and later submitted a request to remain on full-time, light duty through June 2012. However, in March 2012, Huff suffered a heart attack, which was deemed "service related" by her treating physician. After her heart attack, Huff went on disability leave.

Huff's physician subsequently cleared her to return to work on a part-time, "full duty" basis from October 22, 2012 to January 21, 2013. Three days later, the Sheriff terminated her employment due to her inability to return to work in a full-time capacity.

2

B.      Procedural Background

Huff filed a complaint in the Circuit Court of Roanoke County, asserting four counts against the Sheriff.  In relevant part, the complaint alleged that (1) the Sheriff failed to properly reemploy Huff and failed to make reasonable efforts to accommodate her disability in violation of 38 U.S.C. § 4313, and (2) the Sheriff was required to allow Huff a two-year convalescence period before terminating her employment pursuant to 38 U.S.C. § 4312.[2]

The parties submitted competing motions for summary judgment on the above counts. Relying on *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299 (4th Cir. 2006), the circuit court ruled that Sections 4312 and 4313 apply only until the moment of reemployment.  Because the Sheriff rehired Huff in the same position that she had left during her deployment, the circuit court found these provisions were inapplicable to her claims.  Accordingly, the court granted the Sheriff's motion for summary judgment.

The case proceeded to trial on the two remaining counts.[3]  After Huff presented her evidence, the court granted the Sheriff's motion to strike the first count, while taking the Sheriff's motion to strike the remaining count under advisement.  After the Sheriff presented his case, the jury returned a defense verdict on the remaining count.

Huff appeals only the circuit court's decision to grant the Sheriff's motion for summary judgment.

---

[2] For ease of reading, textual references to specific sections of USERRA will hereinafter be denoted as "Section" followed by the pertinent section number within Title 38 of the United States Code.

[3] These counts asserted claims under 38 U.S.C. § 4311(c)(1) and (c)(2) for discrimination on the basis of Huff's military service and for retaliatory discharge.

## II. ANALYSIS

A.    Standard of Review

"In an appeal from a circuit court's decision to grant or deny summary judgment, this Court reviews the application of law to undisputed facts de novo." *St. Joe Co. v. Norfolk Redev. & Hous. Auth.*, 283 Va. 403, 407, 722 S.E.2d 622, 625 (2012). This appeal also presents questions of statutory interpretation, which the Court reviews de novo. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

B.    Statutory Analysis

Congress enacted USERRA "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service[;] to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service[;] and to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(1)-(3). To achieve these purposes, the relevant provisions of USERRA provide complementary protections during distinct phases of employment. Accordingly, a brief recitation of the sequencing of these protections is useful.

Section 4311 prohibits an employer from discriminating against an employee who "is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service." 38 U.S.C. § 4311(a) & (c)(1); *see Francis*, 452 F.3d at 304. Section 4311 provides "umbrella" coverage: it prohibits discrimination on the basis of service at the "initial employment" and any subsequent "reemployment," as well as during "retention in employment" and in the awarding of promotions

4

or benefits. 38 U.S.C. § 4311(a). Moreover, Section 4311 prevents an employer from taking retaliatory action in the event that a covered employee exercises a right afforded by USERRA. 38 U.S.C. § 4311(b) & (c)(2).

Section 4312 requires employers to rehire covered employees upon their return from deployment, if those employees have satisfied the prerequisites listed therein. 38 U.S.C. § 4312(a)(1)-(3); *see In re Petty*, 538 F.3d 431, 440 (6th Cir. 2008); *Francis*, 452 F.3d at 304. If a service member satisfies the requirements of Section 4312, then Section 4313 "sets forth the position of employment to which the returning veteran must be rehired and requires that the veteran be 'promptly reemployed' in that position." *In re Petty*, 538 F.3d at 440; *see* 38 U.S.C. § 4313(a)(1)-(4).

Finally, Section 4316 provides that a service member who has been reemployed under USERRA "shall not be discharged from such employment, except for cause[,]" for a period of up to one year. 38 U.S.C. § 4316(c). This section also ensures that reemployed service members receive certain employment rights and benefits associated with seniority and continuous employment. 38 U.S.C. § 4316(a)-(b). In short, Section 4316 "prevents employers from summarily dismissing those employees for a limited period after they are rehired." *Francis*, 452 F.3d at 304.

With this framework for USERRA in mind, we turn to the parties' arguments.

1. The Two-Year Convalescence Period of Section 4312

Huff contends Section 4312 provides a two-year period after the end of deployment during which a service member's job is protected if the service member is convalescing with service-related injuries. *See* 38 U.S.C. § 4312(e)(2). Thus, she asserts that the Sheriff could not

5

terminate her employment until May 13, 2013. We conclude that the language of Section 4312

does not support this argument.

In relevant part, Section 4312 states:

> (a) Subject to subsections (b), (c), and (d) and to section 4304, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if —
>     (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;
>     (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reasons of service in the uniformed services does not exceed five years; and
>     (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).
>
> . . . .
>
> (e)(1) Subject to paragraph (2), a person referred to in subsection (a) shall, upon the completion of a period of service in the uniformed services, notify the employer referred to in such subsection of the person's intent to return to a position of employment with such employer as follows:
>
> . . . .
>
>     (2)(A) A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services *shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer . . . or submit an application for reemployment with such employer . . . .* Except as provided in subparagraph (B), such period of recovery may not exceed two years.
>
>     (B) Such two-year period shall be extended by the minimum time required to accommodate the circumstances beyond such person's control which make *reporting within the period specified in subparagraph (A)* impossible or unreasonable.

6

> (3) A person who fails to *report or apply for employment or reemployment within the appropriate period specified in this subsection* shall not automatically forfeit such person's entitlement to the rights and benefits referred to in subsection (a) but shall be subject to the conduct rules, established policy, and general practices of the employer . . . .

(emphases added). The language and structure of Section 4312 reveal that subsection (e) governs the notice prerequisite of subsection (a)(3). In other words, to claim the reemployment rights afforded in subsection (a), a service member must provide notice of his intent to return to work "upon the completion of a period of service in the uniformed services." 38 U.S.C. § 4312(e)(1). However, under subsection (e), a two-year extension is triggered when the service member "*is* hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services." 38 U.S.C. § 4312(e)(2)(A) (emphasis added). Read together, these provisions allow a service member who "is" convalescing from an illness or injury "upon the completion of a period of service" up to two years to report to his employer.

Nothing in the text of subsection (e) affects the terms of employment once the service member has been rehired. In short, Section 4312 applies only during the interim between completing a period of service and reemployment. *See Francis*, 452 F.3d at 305 ("We therefore hold that § 4312 applies to protect a covered individual only as to the act of rehiring."); *accord Hart v. Family Dental Group, PC*, 645 F.3d 561, 563 (2d Cir. 2011) ("Section 4312 'only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day.'") (quoting *Francis*, 452 F.3d at 304); *In re Petty*, 538 F.3d at 445 (same); *Clegg v. Arkansas Dep't of Corr.*, 496 F.3d 922, 930 (8th Cir. 2007) ("Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position she would have been in had

7

she not left for military service 'or a position of like seniority, status and pay, the duties of which the person is qualified to perform.'") (quoting 38 U.S.C. § 4313(a)(2)(A)).

Huff contends that her service-related heart attack changes the calculus. But that argument fails to account for the purpose and function of subsection (e) — to notify the employer of a service member's intent to claim his reemployment rights after completing a period of service. Nothing in subsection (e) restarts or tolls the notice period after the employer has reemployed the service member, and it would be unnecessary to provide such a mechanism. Plainly, once a service member has been rehired and begins work, there is no longer any need to notify the employer of his intent to claim the reemployment rights afforded by subsection (a). The only thing remaining is to find an appropriate position for the service member. See 38 U.S.C. § 4313(a) ("[A] person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment, in accordance with the following order of priority . . . .").[4]

Huff suffered her heart attack nearly a year after she had completed the relevant period of service. By then, the Sheriff had rehired her in the same position that she left upon her deployment. Because the two-year convalescence period in subsection (e) — like the rest of Section 4312 — applies only in the interim between the completion of service and reemployment, the circuit court properly granted summary judgment on this count. *See Francis*, 452 F.3d at 305 ("We therefore hold that [Section] 4312 applies to protect a covered individual only as to the act of rehiring.").

---

[4] Moreover, we observe that Huff's argument is inconsistent with Section 4316(c), which expressly states that a service member may be discharged after one year from the date of reemployment without reference to Section 4312(e)(2).

8

2. Reemployment Positions Under Section 4313

Huff contends Section 4313 imposes a continuing duty to make reasonable efforts to accommodate her disabilities after reemployment. She asserts that the Sheriff failed to make such efforts during the sixteen months she was retained as an employee after returning from service. The Sheriff disagrees, and argues that Section 4313 only requires an employer to promptly rehire a returning service member in an appropriate position. We conclude that the Sheriff's interpretation is more consistent with the language and purpose of Section 4313, as well as the implementing regulations.

Section 4313 guarantees that service members entitled to the reemployment rights under Section 4312 will be reemployed in an appropriate position upon their return from service, and protects their employment status in their absence. *See In re Petty*, 538 F.3d at 445 ("Section 4313 protects only the service person's 'seniority, status, and pay.'") (quoting 38 U.S.C. § 4313); *Clegg*, 496 F.3d at 930 (noting that Section 4313 defines the reemployment rights set forth in Section 4312).

In relevant part, Section 4313 states:

> (a) . . . [A] person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in accordance with the following order of priority:
>
> . . . .
>
> (2) Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for more than 90 days —
> (A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform; or

9

(B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

(3) In the case of a person who has a disability incurred in, or aggravated during, such service, and who (after reasonable efforts by the employer to accommodate the disability) is not qualified due to such disability to be employed in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service —

(A) in any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer; or

(B) if not employed under subparagraph (A), in a position which is the nearest approximation to a position referred to in subparagraph (A) in terms of seniority, status, and pay consistent with circumstances of such person's case.

38 U.S.C. § 4313(a)(2)-(3).

Section 4313 requires an employer to "promptly reemploy" the returning service member in either what is known as the "escalator position," or another appropriate position given due consideration to length of service, qualifications, and any disability. The "escalator position" is "the job position that [the returning service member] would have attained with reasonable certainty if not for the absence due to uniformed service." 20 C.F.R. § 1002.191; *see, e.g.*, 38 U.S.C. § 4313(a)(2). Meanwhile, "prompt reemployment" means "as soon as practicable under the circumstances of each case. Absent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181.[5]

_____

[5] The regulation explains: "For example, prompt reinstatement after a weekend National Guard Duty generally means the next regularly scheduled working day. On the other hand, prompt reinstatement following several years of active duty may require more time, because the employer may have to reassign or give notice to another employee who occupied the returning

10

However, "[d]epending upon the specific circumstances, the employer may have the option, or be required, to reemploy the employee in a position other than the escalator position." 20 C.F.R. § 1002.191. Ultimately, the appropriate reemployment position in a specific case depends on "the employee's length of service, qualifications, and disability, if any." 20 C.F.R. §§ 1002.192 & 1002.195. In the case of a service member who returns from service with a disability, the employer must make "reasonable efforts" to accommodate the disability in the escalator position if the service member is not qualified to be employed in the escalator position because of the disability. *See* 38 U.S.C. § 4313(a)(3). Then, if the service member cannot qualify for the escalator position due to the disability after reasonable efforts by the employer, the service member must be reemployed in a position with "equivalent seniority, status, and pay" for which the individual is qualified or could become qualified through reasonable efforts by the employer. *See* 38 U.S.C. § 4313(a)(3)(A).[6] If there is no equivalent alternative, the employer must reemploy the service member in the position that is the closest approximation in terms of seniority, status, and pay. *See* 38 U.S.C. § 4313(a)(3)(B).

However, "[t]he employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the

---

employee's position." 20 C.F.R. § 1002.181. A disability incurred in, or aggravated during, a period of service, and the efforts necessary to accommodate the disability in the workplace, appear to be relevant circumstances that should be considered when determining what constitutes "prompt reemployment." *See id.*

[6] "Reasonable efforts" are "actions, including training provided by an employer[,] that do not place an undue hardship on the employer." 20 C.F.R. § 1002.5(i). In turn, "[u]ndue hardship" is "an action requiring significant difficulty or expense" in light of several enumerated factors. 20 C.F.R. § 1002.5(n). A returning service member is "[q]ualified" when he or she "has the ability to perform the essential tasks of the position." 20 C.F.R. § 1002.198(a)(1). "Whether a task is essential depends on several factors," including "[t]he employer's judgment" and "[w]ritten job descriptions developed before the hiring process begins." 20 C.F.R. § 1002.198(a)(2).

11

appropriate reemployment position." 20 C.F.R. §§ 1002.198 & 1002.226.[7] Thus, the

implementing regulations make clear that the employer must consider a service member's

disability and whether "reasonable efforts" could accommodate such disability while

determining whether to reemploy the returning service member and the appropriate

reemployment position. *See* 20 C.F.R. §§ 1002.198 & 1002.226 (providing that "[t]he employer

is not required to reemploy the employee *on his or her return from service*, if he or she cannot,

after reasonable efforts by the employer, qualify for the appropriate reemployment position")

(emphasis added). In sum, deciding how to reemploy a returning service member is part and

parcel of the decision of whether to reemploy the service member under Section 4313.

From the language of the statute and the implementing regulations, it follows that a claim

under Section 4313 is limited to challenging placement upon reemployment, or the promptness

of such reemployment. *See In re Petty*, 538 F.3d at 441 (noting that the defendant "was not

permitted to delay or otherwise limit [the plaintiff's] reemployment rights in any way"); *Francis*,

452 F.3d at 305 (concluding that the employer satisfied Sections 4312 and 4313 when it rehired

the returning service member in the same position with the same title, salary, and work); *Bennett

v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 786 (N.D. Tex. 2013) ("The reemployment

requirements of [Sections 4312 and 4313] apply only to the initial rehiring, not subsequent

reassignments."). Moreover, the close relationship between the right to reemployment under

Section 4312 and the right to a specific position upon reemployment under Section 4313

supports the conclusion that the protections afforded by Section 4313 do not apply beyond the

date of reemployment. *See Francis*, 452 F.3d at 305 (determining whether an employer failed to

---

[7] If the employer refuses to reemploy a returning service member, then the employer
bears the burden of proving whether an accommodation or effort would impose an undue
hardship. 38 U.S.C. § 4312(d)(1)-(2).

provide the plaintiff with "reemployment rights," and thereby violated Section 4312, by determining whether the employer complied with the requirements of Section 4313). After the date of reemployment, and during "retention in employment," a covered employee receives the protections of Sections 4311 and 4316.

There is no dispute as to whether Huff fulfilled the prerequisites of Section 4312. Thus, Huff was entitled to prompt reemployment pursuant to Section 4313. Because Huff was deployed for approximately one year, Section 4313(a)(2) sets forth the applicable default reemployment position and requirements. Under Section 4313(a)(2), the Sheriff was required to promptly reemploy Huff either as a Deputy Sheriff Bailiff with all of the benefits to which she would have been entitled but for the interruption caused by her service, or an equivalent position. There is no dispute that the Sheriff fulfilled this obligation.

Subparagraph (a)(3) is triggered when the returning service member "has a disability incurred in, or aggravated during, such service," *and* the service member "is not qualified due to such disability to be employed" in the escalator position set forth in subparagraph (a)(2)(A) after reasonable efforts by the employer to accommodate the disability. Huff did not come forward with any evidence that the Sheriff found her unqualified for the "escalator position" — Deputy Sheriff Bailiff — at the time of reemployment due to her disability. Therefore, she has failed to come forward with evidence that would trigger the Sheriff's duty to make reasonable efforts to accommodate her disability when placing her in the appropriate reemployment position under Section 4313. In other words, the duty to make reasonable efforts — like the other provisions of Section 4313 — only applies to the structuring of the appropriate reemployment position, which is selected during the decision to reemploy. Because a claim under Section 4313 challenges the

13

initial structure or selection of the reemployment position, nothing that occurred subsequent to the initial reemployment decision is relevant to such a claim.

Further, this interpretation serves the stated purposes of USERRA. Section 4312 provides returning service members with a right to reemployment, which counteracts any disincentive to rehire returning service members who may be subject to irregular periods of unavailability. *See* 38 U.S.C. § 4301(a)(1) (stating that one purpose of USERRA is "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment"). In turn, Section 4313 reduces the risk of losing a position, seniority, benefits, or an opportunity for promotion upon leaving for active service. *See* 38 U.S.C. § 4301(a)(2) (stating that another purpose of USERRA is "to minimize the disruption to the lives of persons performing service in the uniformed services . . . by providing for the prompt reemployment of such persons upon their completion of such service"). Then, as noted above, Section 4316 suspends "at will" employment for up to one year after the date of reemployment.[8] Accordingly, the circuit court properly granted summary judgment on this count as well.

---

[8] During this period, service members receive protection from Section 4311 and Title I of the Americans with Disabilities Act (the "ADA"), which provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA provides that all qualified individuals, including service members, have a right to obtain reasonable accommodations in the workplace for disabilities, including those suffered during service. *See* 42 U.S.C. §§ 12112(b)(5)(A) (defining the term "discriminate against a qualified individual on the basis of disability" to include failing to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual"); 29 C.F.R. § 1630.2(j)(3)(iii) ("[T]he following types of impairments will, at a minimum, substantially limit . . . major life activities . . . major depressive disorder . . . post-traumatic stress disorder . . . .").

III.  CONCLUSION

For these reasons, we conclude that Sections 4312 and 4313 afford returning service members protection only during the act of rehiring.  Because there is no dispute as to whether the Sheriff promptly rehired Huff as a Deputy Sheriff Bailiff upon her return from deployment, the circuit court properly granted summary judgment to the Sheriff on Counts II and III of the complaint.

*Affirmed.*