**Reverse and Remand and Opinion filed May 7, 2026.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00089-CV

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant**

V.

**LE ROY TORRES, Appellee**

**On Appeal from the County Court at Law No. 1**
**Nueces County, Texas**
**Trial Court Cause No. 2017-CCV-61016-1**

## OPINION

This appeal presents an issue of first impression under the Uniformed Services Employment and Reemployment Rights Act (USERRA): if an employee's military service-related disability is discovered *after* he is already reemployed, do the statutory reemployment rights "restart" under USERRA? *See* 38 U.S.C. §§ 4312, 4313. Here, it is undisputed that Le Roy Torres was reemployed by the Department of Public Safety (DPS) after returning from military service and was diagnosed with a service-related disability nearly 2 years

later.  He sued DPS for violating his reemployment rights under USERRA for failing to accommodate his disability after it was diagnosed.

But the only issue he pressed at trial was Section 4313 of the Act, which provides that "a person entitled to reemployment" after returning from military service "shall be promptly reemployed" in the position he or she would have attained absent that service.  DPS did exactly that; it was almost two years later when his disability was finally diagnosed that Torres first requested an accommodation.  Every court to address this issue (and there aren't many) has construed the text of Sections 4312 and 4313 to apply only to *initial* reemployment, not latent disabilities recognized only later.  Perhaps that is not what Congress intended, but it is what Congress said. Because the trial court erroneously instructed the jury that a delayed discovery of a service-related disability restarted the reinstatement process at the beginning, the trial court's judgment must be reversed.  But for the reasons noted in the Conclusion, we remand to the trial court for further proceedings.

## BACKGROUND

### A.  Factual Background

Torres worked as a State Trooper at DPS and had ongoing military obligations with the United States Army Reserves.  Torres was deployed to Iraq in November 2007.  During his deployment, Torres was exposed to toxic burn pits, "a method of garbage disposal that sets open fire to all manner of trash, human waste, and military equipment." *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 586 (2022).

After he returned from deployment, DPS promptly reemployed Torres to his trooper position in February 2009.  Torres's health then began to deteriorate.  He

had repeated upper respiratory infections and severe headaches. A little less than two years after he was reemployed, in November 2010, Torres was diagnosed with a lung condition called constrictive bronchiolitis, a serious disability known to be caused by toxic fumes like those Torres encountered at the burn pits in Iraq.

In January 2011, Torres requested accommodation due to his permanent disability. DPS offered him a temporary, modified duty position involving data entry with full trooper pay, which he accepted. At some point, he was moved to the Driver License office in this temporary, modified duty position.

Torres could not, and would never be able to, perform the duties of a full duty trooper due to his disability. In October 2011, Torres again requested a permanent accommodation for his service-related disability, and specifically requested a transfer to a position in the Driver License office.

Torres's captain, Captain Lawson, recommended approving his request to permanently transfer, and that he remain in his modified duty position until the transfer occurred. Ultimately and inexplicably, DPS's human resources department never finalized Torres's October 2011 request for a permanent transfer—in fact never even responded to it—before Torres resigned almost a year later in August 2012.

## B.    Procedural Background

Torres sued DPS for violating his rights under USERRA.[1] Following a trial, the jury returned a unanimous verdict in favor of Torres. Specifically, the jury found that DPS failed to make reasonable efforts to accommodate Torres's service-

---

[1] DPS originally asserted it was immune from Torres's USERRA lawsuit. The issue was appealed, and the U.S. Supreme Court ultimately held no state may assert sovereign immunity to a USERRA lawsuit in state court. *Torres v. Texas Dep't of Pub. Safety*, 597 U.S. 580, 584 (2022).

related disability from the time of his request in October 2011 until he resigned in August 2012. The jury also found DPS owed Torres over two million dollars in wages and benefits for the failure to accommodate.

Torres moved for entry of a final judgment and requested attorneys' fees. The trial court rendered final judgment on the verdict and awarded Torres over one million dollars in attorneys' fees. DPS moved for a new trial, which the trial court denied. This appeal followed.

## DISCUSSION

### A. Applicable Law Under USERRA

USERRA was enacted in 1994 "as the first significant modification in protection of veterans' employment rights in 50 years." *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 544 (5th Cir. 2013). Nearly eleven years later, the Department of Labor adopted regulations pursuant to its statutory authority. 38 U.S.C. § 4331(a); 20 C.F.R. §§ 1002.1–1002.314. The purposes of USERRA are:

> (1) to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service;
>
> (2) to minimize the disruption to the lives of persons performing service in the uniformed services as well as to their employers, their fellow employees, and their communities, by providing for the prompt reemployment of such persons upon their completion of such service; and
>
> (3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a).

Two causes of actions under USERRA are relevant to this case. The first is discrimination against those in the military when making employment decisions.

4

38 U.S.C. § 4311. The second concerns reemployment rights of those returning to their former civilian jobs after temporary military duty. *See id.* §§ 4312, 4313. Discrimination under Section 4311 and reemployment rights under Sections 4312 and 4313 provide distinct causes of action. *Bradberry*, 732 F.3d at 545.

### 1. Discrimination

Section 4311 is not limited to initial employment decisions; it provides that a service member "shall not be denied initial employment, *reemployment*, *retention* in employment, *promotion*, or *any benefit* of employment" because of the person's military service. 38 U.S.C. § 4311(a) (emphasis added). An employer violates this provision when the person's military service is a "motivating factor" in an employment decision. *Id.* § 4311(c)(1). An employer is not liable, however, if it can prove the "action would have been taken in the absence of" the person's military service. *Id.*

### 2. Reemployment

As relevant in this case, USERRA's reemployment rights are set forth by Sections 4312 and 4313. Under Section 4312, a person returning from military service is "entitled to the reemployment rights and benefits and other employment benefits of [USERRA]" if the person meets certain prerequisites, including, among others, providing advanced notice of such service, the cumulative length of absence does not exceed five years, and the person timely applies for reemployment. *Id.* § 4312(a).[2] If those prerequisites are met, then Section 4313 guarantees that returning employees are entitled to be "promptly reemployed" to a position they would have attained if they had not been absent due to military

---

[2] There is no dispute that Torres met these prerequisites and was eligible for reemployment rights under USERRA when he returned from his military service in 2009.

service, referred to as an "escalator position." *See id.* § 4313(a)(2); 20 C.F.R. § 1002.191.

If a person has a service-related disability, an employer must make reasonable efforts to accommodate the employee's disability and help the employee become qualified for the escalator position. 38 U.S.C. § 4313(a)(3); 20 C.F.R. § 1002.226. If, after reasonable efforts to accommodate, the employee is unqualified for the escalator position, he or she must either be reemployed to (1) a position with equivalent "seniority, status, and pay" for which the employee is qualified, or would be qualified by the employer's reasonable efforts; or (2) a position that is "the nearest approximation" of that equivalent position. 38 U.S.C. § 4313(a)(3)(A)–(B); 20 C.F.R. § 1002.225. Reasonable efforts to accommodate the employee's disability do not include actions that would cause an "undue hardship" on the employer. 30 U.S.C. § 4313(10). An employee is not required to prove discrimination to establish a reemployment claim under Sections 4312 and 4313. 20 C.F.R. § 1002.33; *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 442 (6th Cir. 2008).

## B.     Jury Charge Error

In its first issue, DPS argues that the trial court improperly instructed the jury on an invalid legal theory of liability. Torres initially sued DPS alleging both discrimination (§ 4311) and disability reemployment (§§ 4312 & 4313) causes of action. Torres later abandoned his discrimination claim and proceeded solely on his reemployment claim. Over DPS's objections, the jury was instructed only on a reemployment theory of liability, not discrimination.

On appeal, DPS argues that because it is undisputed that Torres was reemployed in 2009 and that his disability was not diagnosed until nearly two years

later, the reemployment theory of liability under Sections 4312 and 4313 is not legally valid. Instead, according to DPS, the jury should have been instructed on a discrimination theory of liability under Section 4311 and the relevant affirmative defense that an employer is not liable if it can prove the "action would have been taken in the absence of" the person's military service. 38 U.S.C. § 4311(c)(1).

## 1. Standard of Review

We review a challenge to a jury charge for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). A trial court errs by submitting invalid theories of liability to the jury—"e.g., liability theories that have not been pled, are not supported by the legally sufficient evidence, or are not supported by operative law." *Powell Elec. Systems, Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 123 (Tex. App.—Houston [1st Dist.] 2011, no pet.).[3] If the charge is erroneous, we must reverse the judgment if the error was harmful. *Id.* at 122. A jury charge error is harmful if it probably caused the rendition of an improper judgment. *Horton v. Kansas City Southern Railway Co.*, 692 S.W.3d 112, 138 (Tex. 2024). To determine whether the error was harmful, we must consider the entire record. *In re Est. of Poe*, 648 S.W.3d 277, 285–86 (Tex. 2022). An erroneous jury charge probably results in an improper judgment when it confuses or misleads the jury in answering a question that is material to the judgment. *Id.* at 286.

If the plaintiff refused to submit a valid legal theory of liability after defendant's objection, then normally, the proper disposition is to render judgment in favor of the defendant. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43–44

---

[3] Note, this appeal does not present an issue of a broad-form jury question that mixes valid and invalid theories of liability. *See Horton v. Kansas City Southern Railway Co.*, 692 S.W.3d 112, 139–43 (Tex. 2024); *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389–90 (Tex. 2000). Rather, the jury was instructed on only one theory of liability (reemployment), which DPS contends was a legally invalid theory of liability in this case.

(Tex. 2007). A court may remand in the interest of justice, however, if an opinion "substantially clarifies [a] novel issue." *Rogers v. Bagley*, 623 S.W.3d 343, 358 (Tex. 2021).

### 2. Analysis

The issue of whether a reemployment theory of liability under Sections 4312 and 4313 applies when a service member's latent disability arises after reemployment is an issue of first impression in Texas, and perhaps the nation. DPS relies on case law from various jurisdictions that concludes reemployment claims under Sections 4312 and 4313 apply only at the time of reemployment, while discrimination claims under Section 4311 may apply even after reemployment occurs. The Fifth Circuit, for example, explained that "Section 4311 discrimination can appear throughout the employment continuum, from consideration for hiring to employee termination." *Bradberry*, 732 F.3d at 547. "Section 4312 is much narrower, applying to a return to the civilian workplace after a period of military duty." *Id.* Likewise, the Sixth Circuit, relying on cases from the Eighth and Fourth Circuits, described USERRA's reemployment rights under Sections 4312 and 4313 as protecting "service members at the instant of seeking reemployment" while Section 4311 "applies after reemployment has occurred and prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed." *Petty*, 538 F.3d at 439–40 (citing *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 930 (8th Cir. 2007) and *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006)); *see also Hart v. Family Dental Group, PC*, 645 F.3d 561, 563 (2nd Cir. 2011).

DPS primarily relies on two additional cases to argue disability protections under Section 4313 are not triggered by a complaint after the date of

8

reemployment, particularly when the employer is unaware of the disability: *Butts v. Prince William County School Board*, 844 F.3d 424, 432–33 (4th Cir. 2016) and *Huff v. Winston*, 292 Va. 426, 437–43 (2016). In *Butts*, a school board reemployed a service member returning from deployment to her escalator position as a fifth-grade teacher. 844 F.3d at 427. Soon thereafter, the teacher's performance declined. *Id.* The board reassigned her to teach fourth grade, but her performance issues persisted. *Id.* at 428. The teacher eventually requested long-term sick leave due to stress, anxiety, and depression attributed to her military service. *Id.* While on sick leave, the board notified the teacher that it would recommend her dismissal based on her performance. *Id.* The teacher filed a grievance claim indicating that she suffered from PTSD, with which she had been diagnosed only weeks before. *Id.* The board nonetheless terminated the teacher. *Id.*

The Fourth Circuit concluded that the board complied with USERRA because it reemployed the teacher to her escalator position (a fifth-grade teacher) for which she was qualified. *Id.* at 431–32; *see* 38 U.S.C. § 4313(a)(2)(A). The court held that Section 4313(a)(3) did not apply "because the requirement to provide [the teacher] an alternate position due to her disability only applies if the employer knows of the disability at the time of reemployment." *Butts*, 844 F.3d at 432. It was clear that the board was not aware of the teacher's disability at the time of her initial reemployment. *Id.* at 433. The Fourth Circuit held that "[t]he duty to make reasonable efforts to accommodate a service-related disability—like the other provisions of Section 4313—only applies to structuring the appropriate reemployment position at the point of reemployment." *Id.*

In *Huff*, a service member was diagnosed with PTSD while on deployment. 292 Va. at 431. After returning from deployment, she was initially reemployed to her escalator position. *Id.* She continued to suffer from PTSD, which interfered

with her job. *Id.* One year into her employment, plaintiff suffered a debilitating "service-related" heart attack and was required to go on disability leave. *Id.* at 432. Soon thereafter, her doctor cleared her to work on a part-time basis. *Id.* Three days later, however, plaintiff's employer terminated her due to her inability to return to work full-time. *Id.* Plaintiff alleged that her employer violated Section 4313(a) because it failed "to make reasonable efforts to accommodate her disabilities after reemployment." *Id.* at 437. Plaintiff's employer contended that Section 4313 "only requires an employer to promptly rehire a returning service member in an appropriate position." *Id.*

The Virginia Supreme Court held that the employer's interpretation was "more consistent with the language and purpose of Section 4313, as well as [USERRA's] implementing regulations." *Id.* at 438. It held that Section 4313 "only applies to the structuring of the appropriate reemployment position, which is selected during the decision to reemploy." *Id.* at 442. Plaintiff had provided no "evidence that [her employer] found her unqualified for the 'escalator position' . . . at the time of reemployment due to her disability." *Id.* Therefore, plaintiff provided no "evidence that would trigger [her employer's] duty to make reasonable efforts to accommodate her disability when placing her in the appropriate reemployment position under Section 4313." *Id.* "[N]othing that occurred subsequent to [plaintiff's] initial reemployment decision [was] relevant" to her Section 4313 claim. *Id.* Ultimately, the court held that "Sections 4312 and 4313 afford returning service members protection only during the act of rehiring." *Id.* at 443.

As explained above, we believe the statutory text supports these cases. Section 4313 of the Act provides that "a person entitled to reemployment" after returning from military service "shall be promptly reemployed" in the position he or she would have attained absent that service. DPS did so. It says nothing about

latent disabilities or restarting the reemployment process for them. No matter how sympathetic, we cannot extend the statute to such cases when Congress has not.

In response to these authorities, Torres relies solely on the Department of Labor's commentary in the preamble to Section 1002.226 of the Code of Federal Regulations when it was promulgated in 2005. Section 1002.226 itself provides

> If the employee has a disability that was incurred in, or aggravated during, the period of service, what efforts must the employer make to help him or her become qualified for the reemployment position?
>
> (a) USERRA requires that the employee be qualified for the reemployment position regardless of any disability. The employer must make reasonable efforts to help the employee to become qualified to perform the duties of this position. The employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the appropriate reemployment position.

20 C.F.R. § 1002.226(a). The Department's commentary in the preamble to this regulation instructs that

> The disability must have been incurred or aggravated when the service member applies for reemployment, even if it has not yet been detected. **If the disability is discovered after the service member resumes work and it interferes with his or her job performance, then the reinstatement process should be restarted under USERRA's disability provisions**.

70 Fed. Reg. 75246, 75277, 2005 WL 3451172 (Dec. 19, 2005) (emphasis added). Based on this commentary, Torres requested and that the trial court instruct the jury that the reinstatement process should be restarted if the disability is discovered after the employee resumes work.

No cases relevant to this issue consider this commentary from the Department. We are aware of only one federal district court case that even

11

references the Department's commentary, *Murray v. Mayo Clinic*, No. CV-14-01314-PHX-SPL, 2015 WL 13655672, at \*6 (D. Ariz. 2015). In *Murray*, the plaintiff relied on the Department's commentary to argue that the post-reemployment "emergence of his PTSD symptoms should have restarted the reemployment process." *Id.* at \*4. But the plaintiff's disability was "discovered" prior to his application for reemployment, not "after [he] resumed[d] work." *Id.* at \*6 (quoting 70 Fed. Reg. at 75277). The *Murray* court was "not persuaded by [p]laintiff's tortured attempt to shoehorn himself into this particular paragraph of the USERRA Preamble." *Id.* The district court did not reach the situation, as presented here, in which a service member returns from service, is reemployed, and is subsequently diagnosed with a service-related disability. *Id.*

The Department's commentary in the preamble to the regulations appears to be the only authority for the interpretation that the reemployment process should be restarted if a service-related disability is discovered after reemployment. But as a preamble, it lacks the force and effect of law. *See Kisor v. Wilkie*, 588 U.S. 558, 583 (2019). Moreover, an agency's interpretation of its own regulation receives deference only if the regulation is "genuinely ambiguous." *Id.* at 573 (explaining limits of *Auer*[4] deference).[5] Here, Torres does not argue Section 1002.226 of the

---

[4] *Auer* deference refers to the doctrine that a court should defer to an agency's interpretation of its own ambiguous regulation under limited circumstances. *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019)(citing *Auer v. Robbins*, 519 U.S. 452 (1997)). *Auer* deference is slightly different than *Chevron* deference, the doctrine in which courts defer to agency interpretations of statutes if the statute is ambiguous and the interpretation is reasonable. *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). We note that whether *Auer* deference is still good law is an open question given the U.S. Supreme Court's recent overturning of *Chevron* deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). We need not delve deeper into this question for purposes of this opinion, however, as we conclude the regulation at issue is unambiguous and therefore the agency's interpretation is not entitled to deference.

[5] Note Texas has a similar framework regarding deference to agency interpretations of statutes and regulations. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011) ("If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation . . . we normally defer to the agency's interpretation unless it is plainly erroneous or

Code of Federal Regulations is ambiguous or otherwise explain how the Department's commentary is supported by the plain text of USERRA and the corresponding regulations.

In reviewing the USERRA statutory scheme as a whole, including the related regulations, we agree with the case law interpreting USERRA, and conclude reemployment rights under Sections 4312 and 4313 apply only at the time of reemployment. *See, e.g.*, *Butts*, 844 F.3d at 432–33; *Huff*, 292 Va. at 437–43.[6] Here, there is no dispute that DPS reemployed Torres into his escalator position when he returned from his military service, and at that time Torres did not claim he was unqualified for such a position due to a disability. DPS further had no notice of Torres's disability at the time of reemployment. As a result, Torres's sole available claim for actions by DPS after his reemployment was under Section 4311, a claim he expressly abandoned.

Accordingly, we conclude that the jury was instructed on an invalid legal theory in this case, and we reverse the trial court's judgment.[7]

## CONCLUSION

Because the jury was instructed on an invalid theory of liability, we reverse the trial court's judgment. Generally, we render rather than remand a judgment when a party submits the case on an invalid theory. *See BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 403 n.6 (Tex. 2017). Yet "even when rendition

---

inconsistent with the language of the statute, regulation, or rule."); *RR Com'n of Tex. v. Tex. Citizens for a Safe Future and Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011) (explaining "the language at issue must be ambiguous" before an agency's reasonable interpretation is given deference).

[6] A USSERA treatise confirms our view that the case law on this issue conflicts with the Department's commentary. *See* Kathryn Piscitelli & Edward Still, THE USERRA MANUAL: UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS § 5:2 (2025).

[7] We therefore need not reach DPS's alternative issues on appeal. Tex. R. App. P. 47.1.

would otherwise be warranted, our rules of appellate procedure allow discretion for a remand when 'the interests of justice require' it." *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 836 (Tex. 2022) (quoting Tex. R. App. P. 43.3(b)). This discretion may apply when our decision in a pending case "substantially clarifies [a] novel issue." *Rogers*, 623 S.W.3d at 358. We think that applies here.

This litigation has had a nest of novel issues. The first five years here were consumed by DPS's interlocutory appeal asserting it was immune to any USERRA claim, an argument that succeeded in the Thirteenth Court of Appeals,[8] but was eventually rejected when the U.S. Supreme Court granted certiorari and in a 5-4 opinion reversed and remanded for trial.[9] No Texas court has addressed the merits of a USERRA claim (a mere handful have even mentioned it), and no pattern jury charge exists to guide a trial court in submitting it to a jury.

We do not fault Torres or his attorneys in such uncertain circumstances for choosing to proceed on his reemployment claim under Sections 4312 and 4313 (which do not require proof of discrimination) rather than his Section 4311 claim (which does). Nor do we fault DPS for its five-year detour through the U.S. Supreme Court. Both may have been due to uncertainty about what to do in this novel case. Assuming we have correctly decided some of the uncertainties here, the issues that remain should be decided by a jury. Accordingly, in the interest of justice we reverse the trial court's judgment and remand to the trial court for further proceedings.

---

[8] *See Tex. Dep't of Pub. Safety v. Torres*, 583 S.W.3d 221 (Tex. App.—Corpus Christi–Edinburg 2018), *rev'd and remanded*, 597 U.S. 580 (2022).

[9] *See Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580 (2022).

_/s/Scott K. Field_

Scott K. Field

Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.