UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

No. 01-2452
(CA-98-190)

———————————

United States of America ex rel. Martin Becker,

                                    Plaintiff - Appellant,

        versus

Westinghouse Savannah River Company,

                                    Defendant - Appellee.

———————————

O R D E R

———————————

The court further amends its opinion filed September 27 and amended October 3, 2002, as follows:

On page 6, first full paragraph -- the last sentence in the paragraph is deleted, and is replaced with the following:

> Subsection (a)(7) imposes civil liabilities on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."

                                    For the Court - By Direction


                                    /s/ Patricia S. Connor

$$\overline{\hspace{3.5in}}$$
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 01-2452
(CA-98-190)

---

United States of America ex rel. Martin Becker,

                                    Plaintiff - Appellant,

        versus

Westinghouse Savannah River Company,

                                    Defendant - Appellee.

---

O R D E R

---

The court amends its opinion filed September 27, 2002, as follows:

On page 5, first full paragraph, line 11 -- the date is corrected to read "July 11, 2001."

                                For the Court - By Direction


                                /s/ Patricia S. Connor
                                          Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA, ex rel.
Martin Becker,
    *Plaintiff-Appellant,*

v.

No. 01-2452

WESTINGHOUSE SAVANNAH RIVER
COMPANY,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the District of South Carolina, at Aiken.
Cameron McGowan Currie, District Judge.
(CA-98-190)

Argued: June 3, 2002

Decided: September 27, 2002

Before MOTZ and KING, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by published opinion. Senior Judge Beezer wrote the opinion, in which Judge Motz and Judge King joined.

_____

**COUNSEL**

**ARGUED:** John Steven Simmons, SIMMONS & GRIFFIN, L.L.C., Columbia, South Carolina; Stuart F. Pierson, TROUTMAN SAND-

ERS, L.L.P., Washington, D.C., for Appellant. Jeffrey Stuart Patterson, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Henry Hammer, HAMMER, HAMMER, CARRIGG & POTTERFIELD, Columbia, South Carolina, for Appellant. Daniel J. Westbrook, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee.

---

## OPINION

BEEZER, Senior Circuit Judge:

Martin Becker brought this suit under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. Becker alleges that Westinghouse Savannah River Company ("Westinghouse") spent government funds for an unauthorized purpose and created false records to conceal the disbursement. Becker appeals the district court's entry of summary judgment and assigns error to the court's rulings on several procedural motions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

The Savannah River Plant ("Plant") is a federally-owned nuclear installation in South Carolina owned by the United States. The Department of Energy ("DOE") contracts with Westinghouse for operation and maintenance of the Plant on a cost plus basis. Westinghouse requests funding for Plant projects from DOE. If DOE approves Westinghouse's funding requests, it submits the requests to the President for inclusion in the budget, who then submits the budget to Congress for authorization. *See* 1 Office of the Gen. Counsel, U.S. Gen. Accounting Office, Principles of Federal Appropriations Law 1-13 to 1-18 (2d ed. 1991). If Congress appropriates funds for the specific funding request, DOE "obligates" funds for the specified project and establishes an appropriations account.[1] Westinghouse may receive

---

[1] No actual money is placed in DOE's appropriations accounts. Appropriations "represent legal authority granted by Congress to incur obligations and to make disbursements for the purposes, during the time periods, and up to the amount limitations, specified in the appropriations acts." 1 Principles of Federal Appropriations Law, *supra*, at 2-4.

2

payment charged to an appropriations account only for authorized work and only in amounts equal to Westinghouse's actual costs plus an additional fee. *See id.* at 2-4.

In Fiscal Years 1992 through 1995, Congress appropriated $55 million for the construction of three buildings at the Plant ("Building Construction").[2] DOE obligated just under $54 million and established appropriations accounts specifically for Building Construction managed by DOE's Office of Defense Programs. Westinghouse completed the Building Construction under budget, with a balance of at least $12 million of appropriated funds in the Defense Programs accounts.

In January 1995, DOE underwent management and budget reorganization. Management responsibility for the Westinghouse Defense Programs accounts was transferred to DOE's Office of Environmental Management. Because the Offices of Defense Programs and Environmental Management were funded through separate Congressional appropriations, however, appropriations to Defense Programs accounts could not be transferred to Environmental Management accounts without Congressional approval. *See* 1 Principles of Federal Appropriations Law, *supra*, at 2-25 to 2-28. Although DOE apparently requested Congress to authorize transfer of the Defense Programs appropriations to Environmental Management accounts, DOE was unclear whether approval by Congress was actually given.[3]

---

[2] The appropriations are designated as line items 92-D-150 and 92-D-153 and can be found in the following public laws: National Defense Authorization Act for Fiscal Years 1992 and 1993, Pub. L. No. 102-190, § 3102(2), 105 Stat. 1290, 1564-65 (1991); National Defense Authorization Act for Fiscal Year 1993, Pub. L. No. 102-484, § 3104(b)(1), 106 Stat. 2315, 2633-34 (1992); National Defense Authorization Act for Fiscal Year 1994, Pub. L. No. 103-160, § 3103(b)(1), 107 Stat. 1547, 1940-41 (1993); National Defense Authorization Act for Fiscal Year 1995, Pub. L. No. 103-337, § 3103(a)(5), 108 Stat. 2663, 3080-81 (1994).

[3] The evidence before the district court did not show whether Congressional approval for the transfer was given. In a 1995 Conference report, Congress authorized $667 million of "prior year balances" to be used for Defense Environmental Restoration and Waste Management accounts, which are under the supervision of the Office of Environmental Manage-

Despite this uncertainty, DOE transferred approximately $12 million from the Defense Programs accounts to Environmental Management accounts. DOE directed Westinghouse to change Budgeting and Reporting codes in DOE and Westinghouse's shared accounting system. The new codes would indicate that the $12 million of appropriations constituted a credit balance in the Environmental Management account. Although Westinghouse was aware of the uncertainty within DOE regarding Congressional authority for the appropriations transfer, it acceded to the Department's direction and changed the codes. DOE then relied upon the putative Environmental Management funding authority indicated by the codes to authorize payment to Westinghouse for Plant expenditures unrelated to Building Construction.

Becker filed this suit, averring that Westinghouse had wrongfully retained and used government funds and had created false records to conceal this conduct in violation of §§ 3729(a)(4) and (a)(7) of the FCA.[4] The government investigated the allegations in Becker's complaint but declined to intervene, giving Becker the right to conduct the action *qui tam*. 31 U.S.C. §§ 3730, 3730b.

---

ment. H.R. Conf. Rep. 104-293, at *68. It is unclear from the face of the report whether Congress meant to authorize a lump-sum transfer from all Defense Programs accounts for which management responsibility was transferred to the Office of Environmental Management or to grant only "deobligation-reobligation" authority to DOE to use funds from expired Fiscal Year 1995 Environmental Management accounts. *See* 1 Principles of Federal Appropriations Law, *supra*, at 7-53. A lump-sum appropriation allows the recipient agency to distribute funds among the individual line item accounts as it sees fit. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984); 1 Principles of Federal Appropriations Law, *supra*, at 6-158 to 6-167. Even if Congress authorized a lump-sum transfer, there is insufficient record evidence to determine as a matter of law whether DOE treated the line item transfer at issue here as part of that approved lump-sum transfer and thus transferred the funds pursuant to Congressional authority.

[4] Becker also alleged that Westinghouse misrepresented the costs of the Building Construction to the government in violation of §§ 3729(a)(1), (a)(2) and (a)(7), but withdrew those claims and does not appeal the district court's dismissal of them.

4

During the protracted course of discovery, Becker learned that documents divulged by DOE pursuant to Becker's Freedom of Information Act requests had been provided to DOE by Westinghouse. In a letter to the district court outlining the progress of discovery, Becker argued that the fact that Westinghouse originally possessed the documents was relevant to whether Becker's suit was prohibited under the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(d)(4)(A). Becker requested that the district court order Westinghouse to produce a witness to testify about the exchange of documents between Westinghouse and DOE and the origin of those documents. In an order filed July 11, 2001, the district court denied the request without comment.

On August 7, one week before the close of the scheduled discovery period, Westinghouse moved for summary judgment. The following day, Westinghouse served Becker with the affidavit of John Pescosolido, Chief Financial Officer for DOE's Savannah River Operations. On September 4, more than three months after Westinghouse served Becker with documents and objections responsive to Becker's discovery requests, Becker moved to compel the production of two types of accounting documents mentioned by Pescosolido in his affidavit.

The district court granted Westinghouse's motion for summary judgment and denied as untimely Becker's motion to compel discovery. Becker moved for reconsideration, which the district court denied.

Becker timely appeals the summary judgment in favor of Westinghouse, the denial of Becker's motion to compel discovery, the denial of Becker's request that the court order Westinghouse to produce a witness, and the denial of Becker's motion for reconsideration. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

II

We review de novo the district court's summary judgment in favor of Westinghouse. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Summary judgment may be granted only when the record evidence, construed in the light most favorable to the non-movant, shows that "there is no genuine issue as to any material fact."

5

*Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). A "genuine issue" exists if a reasonable jury could return a verdict for the non-movant. *Owen v. Carpenter's Dist. Council*, 161 F.3d 767, 770 (4th Cir. 1998). We may affirm summary judgment on any ground supported by the record. *Brown v. Trans World Airlines*, 127 F.3d 337, 343 (4th Cir. 1997).

Section 3729(a)(7) of the FCA imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." A person acts "knowingly" if he or she knows the record or statement is false or acts in deliberate ignorance of, or with reckless disregard for, the truth or falsity of the record or statement. 31 U.S.C. § 3729(b). Subsection (a)(4) imposes civil liability on any person who "has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt." Subsection (a)(7) imposes civil liabilities on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."

Becker argues that Westinghouse violated § 3729(a)(4) and (a)(7) by acquiescing to DOE's instructions to change the Budgeting and Reporting codes. He contends that Westinghouse changed the Budgeting and Reporting codes while in deliberate ignorance of the existence or lack of Congressional authority for the appropriations transfer or with reckless disregard for whether such authority existed. Becker argues that changing the codes concealed from the government the fact that the appropriations were originally designated for Defense Programs accounts, and that the change enabled Westinghouse to request and receive disbursement from those appropriations for a purpose other than that for which the appropriations were originally authorized.

We find Becker's argument problematic. It is possible to infer from the evidence that, when changing the Budgeting and Reporting codes, Westinghouse at least negligently disregarded whether Congress had approved the appropriations transfer. Yet DOE had at least as much

6

knowledge as Westinghouse regarding Congressional authority for the transfer and nonetheless instructed Westinghouse to change the codes.

*Durcholz*, decided by the Seventh Circuit, is factually similar to this case. There, a government military facility needed a sedimentation pond to be quickly dredged. *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 543 (7th Cir. 1999). To speed the process, a facility official instructed the contractor to submit invoices for unperformed excavation work instead of invoices for dredging. *Id*. at 544. The contractor complied, dredged the pond, and was paid by the facility. *Id*. Durcholz brought suit as relator for the United States, alleging that the contractor knowingly submitted false claims to the government. The Seventh Circuit upheld the district court's summary judgment for the contractor, reasoning that

> [i]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim. In such a case, the government's knowledge effectively negates the fraud or falsity required by the FCA. . . . *We decline to hold [defendant] liable for defrauding the government by following the government's explicit directions.*

*Id*. at 545 (emphasis added).

Besides the Seventh, at least three other circuits recognize that prior government knowledge of an allegedly false claim can negate the scienter required for an FCA violation. *United States ex rel. Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993); *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 534 (10th Cir. 2000); *see also United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 686 (5th Cir. 2002) (rejecting government knowledge defense but noting that such a defense would be viable "where the falsity of the claim is unclear and the evidence suggests that the defendant actually believed his claim was *not false* because the government approved and paid the claim with full knowledge of the relevant facts"). The relevance of the government's

7

knowledge of an allegedly false claim has not been addressed in this Circuit since the 1986 amendments to the FCA.[5] Today, we join with our sister circuits and hold that the government's knowledge of the facts underlying an allegedly false record or statement can negate the scienter required for an FCA violation.

Becker essentially contends that in changing the Budgeting and Reporting codes, Westinghouse implicitly represented to the government that the appropriations were authorized for Environmental Management purposes. In following DOE's instructions, however, Westinghouse properly relied on DOE's knowledge of Congressional authority for the appropriations transfer gleaned from DOE's communications with Congress. *Cf. United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1238 (11th Cir. 1999) (noting that contractor in unauthorized possession of government property must return it or "otherwise dispos[e] of it in accordance with the government's instructions"). DOE's full knowledge of the material facts underlying any representations implicit in Westinghouse's conduct negates any knowledge that Westinghouse had regarding the truth or falsity of those representations.

Becker failed to raise a triable issue that Westinghouse knowingly made a false record or statement pursuant to § 3729(a)(7) and necessarily failed to raise a triable issue on the more stringent specific intent standard of § 3729(a)(4). The district court properly granted Westinghouse's motion for summary judgment.

III

A.

Becker challenges two discovery rulings made by the district court: the September 28 order denying Becker's motion to compel production of documents mentioned in Pescosolido's affidavit, and the July 11 order denying Becker's request that Westinghouse provide a witness to testify about document exchanges between Westinghouse and

---

[5] Before the 1986 amendments to the FCA, full government knowledge of the facts underlying a *qui tam* action precluded the district court's jurisdiction to hear the suit. 31 U.S.C. § 3730(b)(4) (1982).

DOE during discovery. Becker contends that the evidence he sought would have been relevant to Westinghouse's knowledge of Congressional authority for the funds transfer. We afford substantial discretion to a district court in managing discovery and review discovery rulings only for abuse of that discretion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

The district court denied as untimely Becker's September 28 motion to compel discovery. Local Rule 37.01 of the District Court for the District of South Carolina states that "[m]otions must be filed within twenty (20) days after receipt of the discovery response to which the motion to compel is directed." The district court has discretion to consider an untimely motion to compel if the movant "offer[s] an acceptable explanation for [the motion's] tardiness." *See Spencer Med. Assocs. v. Comm'r*, 155 F.3d 268, 273 (4th Cir. 1998). Becker concedes that his motion was untimely, but argues that his tardiness was justifiable due to "the scope of discovery" and the fact that Westinghouse "stated that it had produced all of the potentially responsive documents" in its responses to Becker's discovery requests.

The district court denied without comment Becker's request that the court order Westinghouse to produce a witness to testify about Freedom of Information Act exchanges between DOE and Westinghouse during the course of litigation. Becker contends that this denial precluded him from obtaining evidence relevant to Westinghouse's knowledge of Congressional authority for the funds transfer.

We need not determine whether the district court abused its discretion. As we have explained, DOE's full knowledge of the facts surrounding Westinghouse's alleged false statement negates the scienter required for violation of the FCA. DOE was the entity involved in appropriations discussions with Congress; Westinghouse could not have had any more knowledge about those discussions and their outcome than DOE itself. Any evidence tending to show Westinghouse's knowledge of the truth or falsity of the claim is immaterial. Even if the district court erred in rejecting Becker's reasons why his motion to compel was tardy or why Westinghouse should be compelled to produce a witness, the error was harmless. *See* Fed. R. Civ. P. 61.

9

B.

Becker challenges the district court's denial of his motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). We review for abuse of discretion a district court's denial of a Rule 59(e) motion. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 402 (4th Cir. 1998).

There are three circumstances in which the district court can grant a Rule 59(e) motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Becker's motion did not point to newly discovered evidence or an intervening change in law that would justify altering or amending the judgment. The district court's summary judgment was legally correct and did not work a manifest injustice. "[M]ere disagreement does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082-83 (4th Cir. 1993). The district court properly denied the motion.

C.

The district did not err by denying Becker's motion for reconsideration. Any error committed by the district court in managing discovery was harmless.

IV

The district court properly entered summary judgment and denied Becker's motion to alter or amend the judgment. If the district court erred in denying Becker's motion to compel discovery or his request that the Court order production of a witness, that error was harmless.

*AFFIRMED*

10