**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 15-1989**

—————————

DIANNE L. BUTTS,

        Plaintiff - Appellant,

    v.

PRINCE WILLIAM COUNTY SCHOOL BOARD,

        Defendant – Appellee,

    and

UNITED STATES OF AMERICA; TAWNYA SOLTIS; KATHRYN FORGAS,

        Defendants.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:14-cv-01073-LMB-TCB)

—————————

Argued: October 27, 2016        Decided: December 21, 2016

—————————

Before GREGORY, Chief Judge, and DUNCAN and THACKER, Circuit Judges.

—————————

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Chief Judge Gregory and Judge Duncan joined.

—————————

**ARGUED:** Matthew B. Kaplan, KAPLAN LAW FIRM, Arlington, Virginia, for Appellant. Mary McGowan, PRINCE WILLIAM COUNTY CIRCUIT COURT, Manassas, Virginia, for Appellee. **ON BRIEF:** Kristi

Lynette Johnson, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia, for Appellee.

_____

THACKER, Circuit Judge:

Appellant Dianne L. Butts ("Appellant") is a veteran whom the Prince William County School Board ("the Board") employed as a fifth grade teacher from 1996 to 2004. In 2004, Appellant, who was an Army Reservist, was deployed to Kuwait. After returning from deployment in 2008, Appellant sought reemployment with the Board pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 ("USERRA"). The Board reemployed Appellant, but issues with her performance quickly arose. Repeated efforts to correct Appellant's deficient performance were unsuccessful, and the Board ultimately terminated her on June 15, 2011. The Board later discovered that Appellant was disabled due to post-traumatic stress disorder ("PTSD").

Appellant then sued the Board, claiming she was improperly reemployed in violation of Section 4313 of USERRA because her mental state rendered her unqualified, and the Board's allegedly hostile work environment triggered or exacerbated her disability. The district court granted summary judgment to the Board.

Because Section 4313 of USERRA cannot serve as a basis for claims involving acts occurring after reemployment, and because Appellant has no available remedies, we affirm.

3

I.

Appellant previously served as an active duty officer in the United States Army. After transitioning to the United States Army Reserve, Appellant sought employment through the Department of Defense's Troops to Teachers Program, which assists service members to become public school teachers. Appellant possesses a Master's Degree in Education and obtained certification from the Virginia Department of Education to teach grades three through six. The Board employed Appellant as a fifth grade teacher from 1996 until 2004; during that time, her teaching reviews were generally favorable.

Appellant returned to active duty in 2004, and was subsequently deployed to Kuwait until 2008. During her deployment, the Board granted Appellant a military leave of absence. But, rather than continuing to extend her leave, Appellant informed the Board she intended to resign from her teaching position at the end of the 2006-2007 school year.

In 2008, Appellant was honorably discharged from her military service. Shortly after her discharge, Appellant was briefly hospitalized for adjustment disorder with depressed mood, which she attributed to witnessing several suicides during her deployment. Later that same year, Appellant contacted the Board about reemployment. Because she had previously resigned and did not, at least initially, seek reemployment under USERRA,

4

the Board told Appellant to submit an online application, which she did. The Board then hired her as a fifth grade substitute teacher at Fitzgerald Elementary School ("Fitzgerald"), intending to permanently assign Appellant to Fitzgerald for the 2008-2009 school year.

Appellant taught at Fitzgerald for less than one week before issues with her performance arose, such as taking leave without following school policy, undermining superiors, and speaking "to the students in a disrespectful or harsh manner and refus[ing] to teach pursuant to [the Board's] lesson guides or established practices, leading to confusion among students assigned to her class." J.A. 66.[1] Based on Appellant's poor performance and conduct, the Board declined "to move forward with an offer of employment" at Fitzgerald for the 2008-2009 school year. Id.

Appellant subsequently contacted an ombudsman for the Department of Defense, who reached out to the Board and clarified that Appellant sought reemployment pursuant to USERRA. The Board then hired Appellant under a one-year contract as a fifth grade teacher for the 2008-2009 school year, and reinstated her "with the same salary and benefits to which she would have been entitled" but for her deployment. J.A. 67. The

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

5

Board also paid Appellant her entire salary for the 2008-2009 school year, credited her for all accrued leave, and provided her with 46 months of retirement service.

But after Appellant began teaching in 2009, her performance issues persisted. The school principal noted that Appellant refused to consider other "teachers' suggestions" for teaching styles and lesson plans, and "conveyed that she knew what she was doing and would teach the students the way she chose," even though her teaching methods were ineffective. J.A. 130. In fact, students returned "to their regular classrooms even more confused," and as a result, "were unable to complete their homework" and were "essentially regressing." Id. As a result, the Board reassigned Appellant to a fourth grade class at another school for the 2009-2010 school year. But she complained about teaching fourth grade rather than fifth grade and insisted she was qualified to teach fifth grade.

Despite Appellant's performance issues, the Board implemented an action plan in an attempt to help Appellant succeed. Pursuant to that action plan, the Board provided Appellant a mentor, instructional resources, and opportunities to meet with education specialists. However, Appellant did not comply with the action plan, and parents started to file complaints raising concerns about Appellant's "quality of instruction and [her] treatment of students assigned to her

6

classroom." J.A. 70. The Board informed Appellant that she needed to improve or face possible discharge. Expecting that Appellant could improve, the Board planned to employ her through the 2010-2011 school year, and provided Appellant a second, more formal improvement plan, with which Appellant also did not comply.

On October 10, 2010, Appellant requested long term sick leave to recover from stress, anxiety, and depression attributed to her military service. This request for sick leave was the first time the Board learned of any possible mental health condition. The Board approved Appellant's request, and she remained on paid sick leave until May 2011, when she transitioned to leave under the Family and Medical Leave Act.

Ultimately, based on Appellant's persistent performance issues and failure to comply with the improvement plans, the Associate Superintendent informed Appellant that she would be recommended for dismissal to the Board. The Associate Superintendent informed Appellant of the dismissal recommendation by mail on May 9, 2011, and provided her instructions for filing a grievance. Appellant had 15 days to file a grievance, but did not do so until 30 days later, on June 8, 2011. Appellant attached a note with her untimely grievance, indicating for the first time that she (1) suffered from PTSD; (2) was currently incapacitated; and (3) would be unable to work

7

for at least two years.  The Board denied the grievance as time barred.  Finally, on June 15, 2011, the Board terminated Appellant's employment.

During her period of sick leave prior to her termination, Appellant sought benefits from both the Department of Veterans Affairs and the Social Security Administration.  On June 3, 2011, the Department of Veterans Affairs determined she was disabled due to service-related PTSD, effective November 30, 2010.  On November 21, 2012, the Social Security Administration likewise deemed Appellant disabled and unable to work in any occupation since October 28, 2010.

Appellant filed a pro se complaint in the Court of Federal Claims in 2014, alleging violations of the Civil Rights Act, Americans with Disabilities Act ("ADA"), and USERRA.  The case was subsequently transferred to the Eastern District of Virginia.  Appellant later obtained counsel, and narrowed her case to a single improper reemployment claim under Section 4313 of USERRA.[2]  Appellant alleged that her reemployment worsened her "minor psychiatric symptoms related to her military service," and "[t]hat worsening eventually culminated in a diagnosis of full post-traumatic stress disorder."  J.A. 54-55.  Appellant sought an injunction requiring the Board to comply with USERRA,

---

[2] Appellant dropped her Section 4311 discrimination claims with the filing of her Third Amended Complaint.

8

and compensatory and liquidated damages for lost wages and benefits.

Following discovery, the parties appeared before the district court for a final pretrial conference. At that time, the district court noted that Appellant had not designated a medical expert to establish the alleged causal link between Appellant's mental health and her employment. Appellant's counsel asserted that her case in chief was "fine without a medical expert." J.A. 25.

Subsequently, the Board filed a motion for summary judgment, and Appellant filed a partial motion for summary judgment. At the motion hearing, Appellant contended she had been improperly reemployed because she was unqualified to teach from 2009 until her termination due to her PTSD. According to Appellant, the Board's improvement plans and the resulting stress caused her decline and PTSD.

The district court took particular issue with the lack of evidence showing any link between Appellant's disability and the Board's conduct. The court stated:

> [T]he problem with a case like this is when you're trying to say that . . . [the Board] caused a medical injury, which as a result of the medical injury, the salary has stopped because the person can't work, you've got to have evidence that, and . . . the causative factor is the mental health, and you [Appellant] don't have a person in your case who's going to be able to testify

9

to that, and so it's -- that is a real failure in the . . . proof.

J.A. 339. The district court ultimately granted the Board's motion because it could "not see how any reasonable jury could find in [Appellant's] favor." Id. at 342.

During the same motion hearing, the Board's counsel also pointed out that Appellant's remedies were limited to those available under USERRA, which meant: (1) her reemployment claim was moot because Appellant was paid all her back wages and promoted to her proper seniority; and (2) no damages existed "because when she was discharged in June of 2011, she had already been disabled since the previous October . . . . So [the Board's] firing her in June made no difference. She couldn't work anyway." J.A. 341. As a result, the Board argued that Appellant "lost [her] legal vehicle . . . for pain and suffering or mental health issues which allegedly caused the disability." Id. at 340. The district court granted the Board's motion for summary judgment, concluding that because the Board had paid Appellant all back wages and increased her salary to the proper seniority, any claim under the reemployment provision was "clearly moot." Id. at 341.

## II.

"Our review of a district court's grant of summary judgment is de novo." Elderberry of Weber City, LLC v. Living-

10

Centers Se., Inc., 794 F.3d 406, 411 (4th Cir. 2015) (emphasis and citation omitted).  In our review, "we apply the same legal standards as the district court, and view all facts in the light most favorable to the nonmoving party."  Certain Underwriters at Lloyd's, London v. Cohen, 785 F.3d 886, 889 (4th Cir. 2015) (alterations, citation, and internal quotation marks omitted).

III.

A.

Appellant contends the Board violated her rights under Section 4313 of USERRA because she was reemployed in a position for which she was unqualified.  Appellant further contends that the resulting stress from the Board's improper reemployment "caused [Appellant's] weakened mental state to deteriorate, until reaching the point where she could do no work of any sort."  Appellant's Br. 9.  Her argument on this point has not been consistent.  In her complaint, Appellant alleges that "**she was qualified** to teach 5th grade during the 2009-2010 school year" and that placing her "in a 4th grade, not a 5th grade position" violated USERRA.  J.A. 53 (emphasis supplied).  On appeal, however, Appellant now claims she was **unqualified** to teach but the Board forced her into a teaching position.

For its part, the Board argues that it has fully complied with USERRA.  In support of this argument, the Board points out that Appellant was reemployed to an "escalator

11

position" -- that is, the position she would have attained but for her deployment. See 20 C.F.R. § 1002.191. Here, such position was the fifth grade teaching position. Moreover, Appellant received the associated pay and benefits of that position.

The Board next contends Appellant cannot use Section 4313 to challenge the events occurring after her reemployment. The Board also claims it did not receive notice of Appellant's disability until her untimely grievance, and her performance issues did not serve to notify the Board of her disability. Finally, the Board contends there are no remedies available to Appellant under USERRA.

B.

1.

USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." Hill v. Michelin N. Am., Inc., 252 F.3d 307, 311 (4th Cir. 2001) (quoting 38 U.S.C. § 4301(a)(3)). USERRA was "enacted to protect the rights of veterans and members of the uniformed services," meaning "it must be broadly construed in favor of its military beneficiaries." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 303 (4th Cir. 2006) (quoting Hill, 252 F.3d at 312-13). Four sections of USERRA outline its framework: 4311, 4312, 4313, and 4316.

12

Section 4311 prohibits an employer from discriminating against an employee who "is a member of . . . a uniformed service." § 4311(a). Section 4311 applies after a veteran is reemployed following deployment. See Francis, 452 F.3d at 304. This section is expansive, prohibiting discrimination because of an employee's service at the "initial employment, reemployment, [and] retention in employment" stages of a veteran's employment, as well as for "promotion, or any benefit of employment." § 4311(a).

Sections 4312 and 4313 protect veterans seeking reemployment. See Petty v. Metro. Gov't of Nashville-Davidson Cty., 538 F.3d 431, 439-440 (6th Cir. 2008) (citation omitted). Section 4312 guarantees returning veterans a right of reemployment after military service. It requires employers to rehire veterans when they return from service if those veterans satisfy the criteria in that section. See § 4312(a)(1)-(3). If a veteran satisfies the criteria, then Section 4313 sets forth the rights under Section 4312 -- namely, the specific position to which veterans are entitled upon their return. See § 4313(a)(1)-(4).

Finally, Section 4316 generally applies at the point of termination of employment. See Petty, 538 F.3d at 440 (citations omitted). Section 4316 prevents employers from firing without cause any returning veterans within either 180

13

days or one year of reemployment, depending on the length of service.  See § 4316(c)(1)-(2).

2.

Section 4312 guarantees reemployment rights and benefits "and other employment benefits" for any employee who was absent from employment "by reason of service in the uniformed services" if three criteria are met:

> (1) the person . . . has given advance written or verbal **notice** of such service to such person's employer; (2) the cumulative length of the absence . . . by reason of service in the uniformed services **does not exceed five years**; and . . . [(3)] the person reports to, or **submits an application** for reemployment to, such employer[.]

38 U.S.C. § 4312(a)(1-3) (emphasis supplied).  The parties do not dispute that Appellant satisfied the criteria, and the record supports that conclusion.  Thus, Section 4313 applies.  Specifically, for veterans whose service period exceeded 90 days, that veteran must be promptly reemployed:

> (A) in the position of employment in which the person **would have been** employed if the continuous employment of such person with the employer **had not been interrupted** by such service, or a position of like seniority, status and pay, the duties of which the **person is qualified to perform**; or
>
> (B) in the position of employment in which the person was employed on the **date of the commencement** of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, **only if** the

14

> person is **not qualified to perform** the
> duties of a position referred to in
> subparagraph (A) **after reasonable efforts** by
> the employer to qualify the person.

38 U.S.C. § 4313(a)(2)(A)-(B) (emphasis supplied). The former

is commonly referred to as the "escalator position" -- meaning

the position a veteran "would have attained with reasonable

certainty if not for the absence due to uniformed service." 20

C.F.R. § 1002.191. This is considered the "starting point for

determining the proper reemployment position." Id. at

§ 1002.192. In sum, the veteran is either employed to the

position he or she would have attained but for his or her

service, or, if unqualified for the escalator position --

despite reasonable efforts to make him or her qualified -- to

the same position held prior to service.

### 3.

To determine the appropriate reemployment position, an

employer may "have to consider several factors." 20 C.F.R.

§ 1002.192. One factor is whether a veteran has a service-

related disability. See id. If a veteran has a service-related

disability and is unqualified for the escalator position,

Section 4313 requires an employer to reemploy that veteran to

(1) a position with equivalent "seniority, status, and pay" for

which the veteran is qualified, or would be qualified by the

employer's reasonable efforts; or (2) a position that is "the

15

nearest approximation" of that equivalent position in terms of "seniority, status, and pay" depending on the veteran's circumstances.  38 U.S.C. § 4313(a)(3)(A).

C.

1.

Here, the facts demonstrate the Board complied with USERRA.  The Board promptly reemployed Appellant to an escalator position -- a fifth grade teaching position.  More importantly, and in compliance with USERRA, the Board reinstated Appellant with the same salary and benefits to which she would have been entitled but for her deployment.

Indeed, the Board would have violated USERRA had it not reemployed Appellant to the escalator position.  Per USERRA, the starting point for determining reemployment must be the escalator position, see 20 C.F.R. § 1002.192, and at the time of reemployment, Appellant did not claim she was unqualified for such position.  Further, there was no notice at the time of reemployment that Appellant suffered from PTSD.

2.

Appellant also cannot demonstrate she was unqualified for the position in which she was employed.  An employee "must be qualified for the reemployment position."  20 C.F.R. § 1002.198.  The term "qualified" means "the employee has the ability to perform the essential task of the position."  Id. at

16

§ 1002.198(a)(1). Here, Appellant was qualified for the escalator position. Appellant has a Master's degree in education, obtained certification from the Virginia Department of Education to teach grades three through six, had prior experience and education in teaching fifth grade before her deployment, and previously had favorable teaching reviews from 1996 to 2004. Appellant applied for the fifth grade teaching position for which she now maintains she was unqualified. And, critically, she stated in her complaint "she was qualified to teach 5th grade," J.A. 53, and "demand[ed] a 5th grade position" after being transferred to the fourth grade, id. at 69.[3]

3.

Moreover, even if Appellant were unqualified for the escalator position, the Board made reasonable efforts to assist her to become qualified. When reemploying a veteran, an employer must, if necessary, "make reasonable efforts to help the employee become qualified" for the escalator position. 20 C.F.R. § 1002.198. "Reasonable efforts" means "actions, including training provided by an employer, that do not place an undue hardship on the employer." 38 U.S.C. § 4303(10). Here, the Board implemented two action plans to attempt to resolve the

---

[3] "[A] party is bound by the admissions of his [or her] pleadings." Lucas v. Burnley, IV, 879 F.2d 1240, 1242 (4th Cir. 1989) (citations and internal quotation marks omitted).

17

deficiencies in Appellant's performance. Those plans provided Appellant mentors, meetings with specialists, and other similar resources, but Appellant was uncooperative. Even then, the Board delayed dismissing Appellant, and instead provided Appellant "with the opportunity to address the concerns in her action plan." J.A. 70. Clearly, the Board made reasonable efforts to qualify Appellant.

On appeal, however, Appellant contends that these accommodation efforts actually worsened her condition. But Appellant offers no support for such argument other than her own testimony. Indeed, she failed to designate an expert to establish a causal link between her mental health and her employment. Absent expert testimony, Appellant's own testimony is insufficient to establish a nexus between the alleged work-related stressors and her PTSD, and thus, her contention cannot survive summary judgment.

4.

Finally, Appellant does not fall under the disability provision of Section 4313 because the requirement to provide an alternate position due to her disability only applies if the employer knows of the disability at the time of reemployment. See 20 C.F.R. § 1002.192. Section 4313 permits a person who has a service-related disability and who remains unqualified for an escalator position despite an employer's reasonable efforts to

18

be reemployed in "any other position which is equivalent in seniority, status, and pay," or the nearest approximation of the same. 38 U.S.C. § 4313(a)(3)(A)-(B). The duty to make reasonable efforts to accommodate a service-related disability -- like the other provisions of Section 4313 -- only applies to structuring the appropriate reemployment position at the point of reemployment. See 20 C.F.R. § 1002.226(a).

Here, because Appellant's disability was unknown to the Board until after terminating her employment, it has no bearing on the reemployment decision. Likewise, Appellant's teaching deficiencies and repeated issues did not come to light until after she was reemployed. Moreover, Appellant's grievance containing a notice of her incapacity was untimely filed on June 8, 2011 -- almost two years after her reemployment.[4]

D.

Even if Appellant had a valid claim under USERRA, there are no remedies available to her. USERRA provides three possible remedies: (1) requiring the employer to comply with

---

[4] Appellant's claim also cannot proceed under Section 4312. In Francis v. Booz, Allen & Hamilton, Inc., this court held that Section 4312 "applies to protect a covered individual only as to the act of rehiring." 452 F.3d 299, 305 (4th Cir. 2006). There, we pointed out that Section 4312 "does not prevent the employer from terminating [an employee] the next day or even later the same day," but we acknowledged, "[t]he apparent harshness of this result is addressed by the fact that §§ 4311 and 4316 operate to protect the employee as soon as she is reemployed." Id. at 304 (citation omitted).

19

USERRA; (2) compensation for lost wages or benefits due to the employer's noncompliance with USERRA; or (3) liquidated damages equal to lost wages or benefits if the employer willfully failed to comply with USERRA. See 38 U.S.C. § 4323(d)(A)-(C).

Here, there is no remedy available to Appellant for four reasons. First, any claim for reinstatement would be futile. Appellant does not dispute that she has been disabled since October 28, 2010, is still disabled to this day, and will likely remain so for the foreseeable future. Second, the Board already paid Appellant for past lost wages and benefits. Thus, any claim for lost wages or benefits is moot. Third, Appellant cannot show that a future lost wages claim could proceed. As the district court noted, Appellant has no medical expert or proof that the Board caused or exacerbated her disability. See, e.g., Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 164 n.2 (4th Cir. 1988) ("[E]xpert opinion is of course the prime -- indeed usually the only -- way to prove medical causation."). And, fourth, Appellant has not argued, nor presented any facts to demonstrate, that the Board willfully violated USERRA.[5]

---

[5] Appellant also sought attorney's fees and costs, but USERRA only permits such an award if the requesting party prevails. See 38 U.S.C. § 4323(h)(2).

IV.

For all of the foregoing reasons, the decision of the district court is

AFFIRMED.