**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1621**

DAREK J. KITLINSKI; LISA M. KITLINSKI,

        Plaintiffs - Appellants,

    v.

UNITED STATES DEPARTMENT OF JUSTICE, Drug Enforcement
Administration As to Privacy Act Claims; MERRICK B. GARLAND, Attorney
General,

        Defendants – Appellees,

    and

OTHER UNNAMED EMPLOYEES OF THE U.S. DEPARTMENT OF JUSTICE,
DRUG ENFORCEMENT ADMINISTRATION AND OFFICE OF THE
INSPECTOR GENERAL; DONNA A. RODRIGUEZ, a/k/a Donna Ashe, Section
Chief, Research and Analysis Staff of the Human Resources Division Drug
Enforcement Administration,

        Defendants.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Liam O'Grady, Senior District Judge.  (1:16-cv-00060-LO-IDD)

Argued:  December 10, 2020                   Decided:  April 8, 2021

Before WILKINSON and FLOYD, Circuit Judges, and Gina M. GROH, Chief United
States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Floyd wrote the opinion in which Judge Wilkinson and Judge Groh joined.

———————————

**ARGUED:** Jackie Lynn White II, Kevin Edward Byrnes, FH+H, PLLC, Tysons, Virginia, for Appellants. Kimere Jane Kimball, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** Rachel Leahey, FH+H, PLLC, Tysons, Virginia, for Appellants. G. Zachary Terwilliger, United States Attorney, Rebecca S. Levenson, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

———————————

FLOYD, Circuit Judge:

The Drug Enforcement Administration (DEA)[1] terminated the employment of Plaintiffs-Appellants Darek and Lisa Kitlinksi after they refused to participate in an internal investigation into their own allegations of misconduct by the DEA. At the time of his termination, Darek was serving on active duty with the U.S. Coast Guard. The Kitlinskis contend that the DEA terminated Darek in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). The Kitlinskis further assert that the DEA terminated Lisa in retaliation for her support of Darek's USERRA claims against the DEA. The Kitlinskis also argue that the DEA retaliated against them for their prior protected activity in violation of Title VII of the Civil Rights Act of 1964.

The district court granted summary judgment in the DEA's favor. For the reasons set forth below, we affirm the judgment of the district court in all respects.

I.

Because the district court resolved this case in the DEA's favor on summary judgment, we view the facts in the light most favorable to the Kitlinskis. *See Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1036 (4th Cir. 2020).

---

[1] The U.S. Department of Justice (DOJ) and the U.S. Attorney General, rather than the DEA, are named as Defendants-Appellees. Because the DEA is the agency that engaged in the relevant conduct, we refer to Defendants-Appellees simply as "the DEA."

3

## A.

Darek Kitlinski began working for the DEA in 1998 as a special agent. In 2009, he became a supervisor in the San Diego Division, overseeing a group of agents responsible for court-authorized wire taps. Darek's spouse, Lisa Kitlinksi, joined the DEA in 1997 as a forensic chemist. In 2011, the DEA promoted Lisa to a position at DEA headquarters in Arlington, Virginia.

Following Lisa's promotion, Darek sought to transfer within the DEA from San Diego to the District of Columbia area. Between March 2011 and June 2014, Darek submitted multiple transfer requests pursuant to the DEA's Married Core Series Transfer Policy (MCSTP). He also applied for various vacant positions within the DEA and sought a transfer based on medical hardship. The DEA denied Darek's transfer requests and selected other candidates for the vacant positions.

Meanwhile, in July 2011, Darek began serving on active duty with the U.S. Coast Guard and accordingly took a leave of absence from the DEA. He had previously served with the U.S. Coast Guard Reserves, requiring annual military commitments and several deployments. He was stationed on active duty in the District of Columbia, which allowed him to relocate to the District of Columbia area with Lisa.

Shortly after Darek was called to active duty in 2011, he began initiating various administrative proceedings challenging the DEA's adverse hiring decisions and denial of his transfer requests. He filed Equal Employment Opportunity (EEO) complaints alleging

violations of Title VII.[2] He also filed several USERRA appeals against the DEA with the Merit Systems Protection Board (MSPB), which adjudicates employee complaints filed under USERRA.[3]

On September 23, 2014, the Kitlinskis reported to DEA headquarters for a deposition arising out of one of Darek's EEO complaints. Upon their arrival, the Kitlinskis parked Lisa's car in the DEA's garage. Shortly after the Kitlinskis returned home from the deposition, Darek found a DEA-issued Blackberry device lodged between the windshield wipers and hood of Lisa's car. The Blackberry was later determined to belong to a DEA employee who worked in human resources. The Kitlinskis thereafter maintained that someone within the DEA planted the Blackberry in Lisa's car in order to track their whereabouts or record their conversations.

Three days later, Darek filed a complaint regarding the Blackberry incident with the Department of Justice's Office of the Inspector General (OIG), which declined to investigate Darek's allegations. OIG instead referred Darek to the Office of Professional Responsibility (OPR), which investigates allegations of misconduct by DEA employees. On October 2, 2014, Lisa reported the Blackberry incident to her supervisor, who also

---

[2] The first of Darek's formal EEO complaints resulted in a favorable March 2015 decision by the Equal Employment Opportunity Commission's Office of Federal Operations, which determined that Darek had established a Title VII claim against the DEA.

[3] Darek submitted a final transfer request in December 2014. The DEA approved that request and assigned him to a vacant position in the DEA's Washington Field Division. In August 2015, the DEA reassigned Darek to a position at DEA headquarters in Arlington, Virginia.

5

referred her to OPR. OPR opened an inquiry into the Blackberry incident on October 7, 2014.

As part of its investigation, OPR directed Lisa to appear for interviews in late October 2014. Lisa initially declined to appear for the interviews or turn over the Blackberry to OPR, citing advice from her lawyer that all matters regarding the Blackberry incident should be directed to him. Lisa eventually appeared for an interview with OPR on October 28, 2014. OPR began the interview by advising Lisa that she could be disciplined if she failed to respond to OPR's questions. Lisa declined to answer questions at various points during the interview, asserting spousal and attorney-client privileges. She also cited one of Darek's USERRA appeals against the DEA before the MSPB to explain her decision not to answer questions. Based on her conduct during the interview, OPR added Lisa as a subject of the investigation for her failure to cooperate.[4]

OPR then sought to schedule an interview with Darek, who was serving on active duty with the Coast Guard at the time. On November 20, 2014, OPR coordinated with U.S. Coast Guard Investigative Services to personally notify Darek of the interview. At the direction of Darek's temporary supervisor in the Coast Guard, Darek's colleague escorted OPR investigators to a conference room at his Coast Guard office to facilitate the in-person notification. Once the OPR investigators arrived at the conference room, they gave Darek

---

[4] On November 5, 2014, Darek filed a complaint with the MSPB regarding the Blackberry incident and the ongoing OPR investigation. That action resulted in an appeal before the Federal Circuit, which upheld the MSPB's dismissal of three of Darek's USERRA claims but vacated and remanded for the MSPB to consider his fourth USERRA claim. *See Kitlinski v. Merit Sys. Prot. Bd.*, 857 F.3d 1374, 1379–82 (Fed. Cir. 2017).

a written notification directing him to appear at OPR for an interview on November 21, 2014. Darek declined to sign the written notification. The investigators informed Darek that failure to comply with the OPR directive could result in disciplinary action. OPR also sent an email to Darek's Coast Guard address directing him to appear for the scheduled interview on November 21, 2014. The email similarly advised Darek that failure to comply with the investigation could result in disciplinary action. Darek declined to attend the scheduled OPR interview. As a result, on December 1, 2014, OPR added Darek as a subject of the investigation for his failure to cooperate.

On December 12, 2014, OPR sent its investigative file to the DEA's Board of Professional Conduct. On May 27, 2015, Christopher Quaglino, the then-Chair of the Board, issued letters recommending the termination of the Kitlinskis' employment based on their conduct during the OPR investigation. The Kitlinskis submitted written and oral responses contesting this recommendation to Michael Bulgrin, a Supervisory Criminal Investigator with the DEA. In those responses, the Kitlinskis argued that OPR lacked the authority to interview Darek while he was serving on active duty with the Coast Guard. On January 11, 2016, Bulgrin terminated the Kitlinskis' employment.

### B.

The Kitlinskis filed this action against the DEA in the Eastern District of Virginia. The operative complaint asserted discrimination and retaliation claims by Darek for the denial of his transfer requests and adverse hiring decisions by the DEA, wrongful termination claims by Darek and Lisa under USERRA and Title VII, a request for

7

attorneys' fees by Darek arising out of prior administrative proceedings, and various claims by Darek and Lisa related to the Blackberry incident.

During discovery, the Kitlinskis sought to depose Michael Horowitz, the Inspector General of the U.S. Department of Justice. The DEA moved for a protective order to preclude the deposition, which a magistrate judge granted. The Kitlinskis did not file an objection to the magistrate judge's ruling with the district court.

After the parties concluded briefing on summary judgment, the Kitlinskis filed a sur-reply brief and a motion to reopen discovery, which the district court denied. The district court subsequently granted summary judgment in the DEA's favor but did not address the Kitlinskis' wrongful termination claims. The Kitlinskis appealed.

In light of the district court's failure to rule on the Kitlinskis' wrongful termination claims, we dismissed the appeal for lack of jurisdiction and remanded for the district court to address those claims in the first instance. *Kitlinski v. DOJ*, 749 F. App'x 204, 205 (4th Cir. 2019) (per curiam).

On remand, the Kitlinskis filed a motion to forgo summary judgment proceedings on their wrongful termination claims under USERRA in favor of an evidentiary hearing or—in the alternative—to supplement their summary judgment briefing on their wrongful termination claims under both USERRA and Title VII. The district court denied the motion, declining to hold an evidentiary hearing and determining that no additional briefing was necessary.

The district court again granted summary judgment in the DEA's favor on all claims. As to the wrongful termination claims under Title VII, the court concluded that

8

the Kitlinskis failed to offer any evidence of a causal connection between protected activity and their terminations. And as to the wrongful termination claims under USERRA, the court reasoned that "there was no military-based reason why Darek did not attend his [OPR] interview" and that Lisa could not show that the DEA terminated her employment based on any USERRA-protected activity. J.A. 2234.[5]

This appeal followed.

## II.

The Kitlinskis argue that the district court erred in granting summary judgment on their wrongful termination claims under USERRA and Title VII. We review the district court's summary judgment ruling de novo. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

## A.

We begin with the Kitlinskis' wrongful termination claims under USERRA. "USERRA 'prohibit[s] discrimination against persons because of their service in the

---

[5] The Kitlinskis have abandoned the remaining claims in their complaint on appeal but raise several additional procedural challenges, which we discuss further below.

uniformed services.'" *Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 430 (4th Cir. 2016) (alteration in original) (quoting *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 311 (4th Cir. 2001)); *see also* 38 U.S.C. § 4311. Courts "broadly construe[]" the statute "in favor of its military beneficiaries." *Francis*, 452 F.3d at 303. USERRA's anti-discrimination provision contains two distinct paths to liability.

First, § 4311(a) "broadly prohibits discrimination in the hiring, rehiring, and retaining of servicemembers." *Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 414 (4th Cir. 2020); *see also* 38 U.S.C. 4311(a). To succeed on a claim under § 4311(a), a servicemember must show "(1) that his employer took an adverse employment action against him; (2) that he had performed, applied to perform, or had an obligation to perform as a member in a uniformed service; and (3) that the employer's adverse action was taken 'on the basis of' that service, such that the service was 'a motivating factor' in the action." *Harwood*, 963 F.3d at 414–15 (quoting 38 U.S.C. § 4311(a), (c)(1)).

Second, § 4311(b) "prohibits employers from 'tak[ing] any adverse employment action against any person because such person has taken an action to enforce a protection afforded any person under [USERRA], . . . or has exercised a right provided for in [USERRA].'" *Francis*, 452 F.3d at 302 (alterations in original) (quoting 38 U.S.C. § 4311(b)). To succeed on a claim under § 4311(b), an employee must show that (1) the employee engaged in protected activity under USERRA, and (2) that protected activity was "a motivating factor in the employer's action." 38 U.S.C. § 4311(c)(2).

10

1.

We first consider Darek's wrongful termination claims under USERRA. The Kitlinskis' complaint and briefing appear to raise a discrimination claim under § 4311(a) based on Darek's status as a servicemember and a retaliation claim under § 4311(b) based on Darek's prior USERRA-protected activity. To succeed on those claims, the Kitlinskis must show, respectively, that either Darek's status as a servicemember or his prior protected activity was "a motivating factor" in his termination. *See* 38 U.S.C. § 4311(c). We agree with the district court that no reasonable factfinder could reach either conclusion.

On appeal, the Kitlinskis primarily argue that OPR lacked the authority to order Darek to appear for the interview while he was serving on active duty with the Coast Guard, and that USERRA protected Darek from the adverse consequences flowing from his decision not to comply with OPR's directive. In advancing that theory of liability, the Kitlinskis wander far afield of § 4311, which requires some evidence of discriminatory animus by a civilian employer. *See Harwood*, 963 F.3d at 414–15 ("Crucially, a plaintiff must prove that discrimination on the basis of service was a motivating factor in an employment action to recover under § 4311.").

The Kitlinskis offer no evidence that Darek's status as a servicemember in the Coast Guard was a motivating factor in the DEA's decision to terminate his employment. Nor can the Kitlinskis point to any evidence that Darek's prior USERRA-protected activity was a motivating factor in his termination. *See Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1026 (6th Cir. 2010) ("Protected status is a motivating factor if a truthful employer would list it, if asked, as one of the reasons for its decision."). Rather, any reasonable factfinder

11

would conclude that the DEA terminated Darek's employment because he refused to attend the OPR interview without any military-based reason for doing so. Indeed, there is no evidence that the Coast Guard ever objected to or sought to prevent Darek's participation in the investigation or that Darek's military service was ever an obstacle to his ability to attend the interview. The Kitlinskis therefore cannot claim that Darek's failure to attend the interview was at all "related to his military obligations" or "required by [his] military service." *McMillan v. DOJ*, 812 F.3d 1364, 1380–81 (Fed. Cir. 2016).

Moreover, the Coast Guard's enabling statute specifically contemplates a cooperative relationship with federal agencies. *See* 14 U.S.C. § 701(a) (providing that "[t]he Coast Guard may . . . utilize its personnel . . . to assist any Federal agency"). That cooperation becomes particularly important when a law-enforcement agency such as the DEA seeks assistance to investigate allegations of wrongdoing in its own ranks. And OPR did just that by working with the Coast Guard's investigative team to secure Darek's participation in the interview. Darek's refusal to attend the interview prevented OPR from speaking to a witness whose testimony was among the most relevant in its investigation, effectively tying the hands of the DEA to uncover wrongdoing within the agency.

Accordingly, we conclude that the Kitlinskis offer no evidence that Darek's military service or his prior USERRA-protected activity was a motivating factor in his termination. In reaching this conclusion, we emphasize that USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). It does not enable a servicemember to refuse to comply with his civilian employer's reasonable requests to participate in an internal investigation into his own

12

allegations of wrongdoing for reasons unrelated to his military service and then claim protection from the adverse consequences flowing from that decision.

We therefore affirm the district court's grant of summary judgment to the DEA on Darek's wrongful termination claims under USERRA.

2.

We next consider Lisa's wrongful termination claim under USERRA. The Kitlinskis argue that the DEA terminated Lisa's employment in retaliation for her participation in or support of one of Darek's USERRA appeals before the MSPB. To succeed on Lisa's § 4311(b) claim, the Kitlinskis must show Lisa's USERRA-protected activity was "a motivating factor" in the DEA's decision to terminate her employment. 38 U.S.C. § 4311(c)(2).

Lisa declined to answer various questions during her OPR interview, citing marital and attorney-client privileges. She also referred to Darek's USERRA appeal before the MSPB to justify her decision not to respond to OPR's questions. The Kitlinskis therefore contend that § 4311(b) shielded Lisa from any adverse consequences resulting from her decision not to answer OPR's questions. The district court concluded that "[a]ny USERRA-protected activities [Lisa] may have undertaken in support of Darek's USERRA claims do not excuse her disruptive and insubordinate behavior during the course of the [OPR] investigation and do not prevent DEA from taking disciplinary action against her." J.A. 2334–35. We agree.

13

To the extent that Lisa engaged in any protected activity under USERRA, the Kitlinskis provide no evidence showing that her activity was a motivating factor in the DEA's decision to terminate her employment. *See Escher*, 627 F.3d at 1026. The record supports only one reason behind the DEA's decision to terminate Lisa's employment: her conduct during the OPR investigation, which is not protected under USERRA. No reasonable factfinder could conclude that any USERRA-protected activity was a motivating factor in Lisa's termination.

On appeal, the Kitlinskis fault the district court for failing to apply the balancing test set forth in *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). The test in *Armstrong* "is usually applied to determine whether opposition activity is protected under Title VII," and "balances the purpose of [Title VII] to protect persons engaging in reasonable activities opposing discrimination[] against Congress' desire not to prevent employers from legitimately disciplining their employees." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 257 (4th Cir. 1998). Even assuming that *Armstrong* applies here, we have little difficulty concluding that the DEA's interest in ensuring its employees' full participation in internal investigations outweighs any interest Lisa had in promoting USERRA's nondiscriminatory purpose.

We therefore affirm the district court's grant of summary judgment to the DEA on Lisa's wrongful termination claim under USERRA.

14

* * *

Accordingly, the district court properly granted summary judgment to the DEA on the Kitlinskis' wrongful termination claims under USERRA.[6]

B.

We turn to the Kitlinskis' wrongful termination claims under Title VII. The Kitlinskis contend that the DEA terminated them in retaliation for their prior protected activity under Title VII. To succeed on their retaliation claims, the Kitlinskis must show that "(1) [they] engaged in a protected activity; (2) the employer acted adversely against [them]; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008)).[7] The district court concluded

---

[6] The Kitlinskis did not seek summary judgment on their wrongful termination claims under USERRA in the district court. Yet they now ask us to enter summary judgment in their favor for the first time on appeal. In light of our conclusion that the district court properly granted summary judgment in the DEA's favor on those claims, we decline to enter summary judgment for the Kitlinskis.

[7] The Supreme Court recently considered the causation standard applicable to the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA). *See Babb v. Wilkie*, 140 S. Ct. 1168, 1172–74 (2020); *see also* 29 U.S.C. § 633a(a). In *Babb*, the Court held that "under § 633a(a), age must be the but-for cause of *differential* treatment, not . . . a but-for cause of the *ultimate* decision." 140 S. Ct. at 1174. We need not decide *Babb*'s applicability in the Title VII context here. The Kitlinskis do not point to any evidence that they suffered any differential treatment based on their USERRA-protected activity, so their Title VII claim fails even under *Babb*'s lower causation standard.

15

that the Kitlinskis failed to offer any evidence of a causal connection between their protected activity and their terminations.

We agree.[8] No reasonable factfinder could conclude that the DEA terminated the Kitlinskis' employment in retaliation for engaging in protected activity. As we have explained, the Kitlinskis offer no evidence showing that the DEA terminated their employment for any reason other than their conduct during the OPR investigation. And OPR initiated that investigation at Lisa's request for the nondiscriminatory purpose of investigating the Kitlinskis' own allegations of misconduct. Accordingly, we affirm the district court's grant of summary judgment to the DEA on the Kitlinskis' wrongful termination claims under Title VII.[9]

### III.

The Kitlinskis raise several additional arguments in this appeal, which we can quickly resolve.

---

[8] The DEA argues that the Kitlinskis waived their Title VII claim by failing to oppose summary judgment on that claim in the district court. Regardless, the claim fails even under de novo review.

[9] The Kitlinskis also advance the alternative theory that the OPR investigation itself amounted to retaliation in violation of USERRA and Title VII. But they do not point to any evidence showing that the DEA conducted the OPR investigation with retaliatory animus based on their prior protected activity. Instead, any reasonable factfinder would conclude that OPR opened the investigation at Lisa's request to investigate the Kitlinskis' own allegations of misconduct.

First, the Kitlinskis argue that the district court erred in declining to hold an evidentiary hearing on their wrongful termination claims under USERRA. In its order denying the Kitlinskis' motion to hold an evidentiary hearing, the district court mistakenly stated that it had already ruled on the Kitlinskis' claims, citing to its pre-remand opinion granting summary judgment in DEA's favor. Shortly after issuing that order, the court issued an amended opinion addressing the USERRA claims.

The Kitlinskis contend that the district court's citation to its pre-remand decision constitutes reversible error. We review the district court's decision to rule on summary judgment without holding a hearing "only for an abuse of discretion." *Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 396 (4th Cir. 1994). The Federal Rules of Civil Procedure and the district court's local rules expressly authorized the court to rule without holding a hearing. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); E.D. Va. Loc. Civ. R. 7(J) ("In accordance with Fed. R. Civ. P. 78, the Court may rule upon motions without an oral hearing."). The Kitlinskis offer no argument explaining how the district court abused its discretion, and we see none here. We affirm the district court's decision to rule on the DEA's motion for summary judgment without holding a hearing.

Second, the Kitlinskis contend that the district court improperly denied their request to reopen discovery. In their sur-reply brief, the Kitlinskis asked the district court to reopen discovery based on internal DEA memoranda that the Kitlinskis claimed to have received only several days prior. They argued that the memoranda, which described sensitive software under consideration by the DEA, supported their theory of the Blackberry

17

incident. The district court concluded that the memoranda were "entirely irrelevant" to the case, relying on the DEA's representations that it was not using the software at the time of the incident. J.A. 2271.

"We afford substantial discretion to a district court in managing discovery and review discovery rulings only for abuse of discretion." *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). We see no abuse of discretion in the district court's careful consideration of the memoranda and the parties' arguments. And given the DEA's representations to the district court that it was not using the software during the relevant time period, we decline to second-guess the court's conclusion that the memoranda were not relevant to the Kitlinskis' claims. Accordingly, we affirm the denial of the Kitlinskis' motion to reopen discovery.

Finally, the Kitlinskis challenge the magistrate judge's decision to grant the DEA's motion for a protective order precluding them from deposing Inspector General Horowitz. The Kitlinskis, however, did not file an objection to the magistrate judge's ruling with the district court. *See* Fed. R. Civ. P. 72(a) (providing that parties "may serve and file objections" to a magistrate judge's order on a nondispositive pretrial matter "within 14 days after being served with a copy"); *Wells v. Shriners Hosp.*, 109 F.3d 198, 199 (4th Cir. 1997) ("In this circuit, as in others, 'a party "may" file objections within ten days or he may not, as he chooses, but he "shall" do so if he wishes further consideration.'" (quoting *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980))). Because the Kitlinskis failed to object to the magistrate judge's ruling, they "ha[ve] waived [their] right

to any further review." *Solis v. Malkani*, 638 F.3d 269, 274 (4th Cir. 2011). We therefore affirm the magistrate judge's decision to grant the DEA's motion for a protective order.


IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*